### Alvis HUDGENS v.
## SOUTHERN EXTRUSIONS, INC. ET AL

5-4521                                    425 S. W. 2d 718

### Opinion delivered April 1, 1968

*Bernard Whetstone,* for appellant.

*Brown, Compton & Prewett* and *Riddick Riffel,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Alvis Hudgens, suffered a hernia in May, 1963, arising out of his employment with appellee company. He was thereupon provided with medical treatment, including an operation to correct the hernia, and was paid compensation until he returned to work on September 2, 1963. On January 4, 1967, Hudgens filed another claim with the commission, alleging there had been a recurrence of the hernia. This claim was heard before a referee, who held that the hernia recurred in June of 1964, and that the claim was barred by the statute of limitations. The commission held that the recurrence was in October, 1964, and the claim was accordingly barred, since same was not filed for more than two years from the time of the recurrence. On appeal to the Columbia County Circuit Court, the commission's ruling was affirmed, and from the judgment so entered, appellant brings this appeal.

Hudgens testified that he began having symptoms of hernia trouble several months after his operation in 1963. He said that he had some trouble in February of 1964, and went to see Dr. Bryon Grimmett, a medical doctor practicing at Waldo. He testified that he again went to see Dr. Grimmett on June 11, 1964, and was told that he had a recurring hernia. He stated that in June, 1965, he had a severe pain that made him sick, forcing him to leave the job, and he was taken to Dr. Grimmett by the press foreman. Claimant said that he dreaded having an operation, and this was not performed until August of 1966. The operation was on the same side as the operation that was performed in 1963. Hudgens testified that the June, 1965, occurrence was the only time that he had to leave work because of pain involved.

Dr. Grimmett testified that the first hernia operation was performed by Dr. Weber, and that Hudgens returned to his work in September, 1963; claimant went to Grimmett in February of 1964, complaining of a bulge. He returned in June of the same year, and at that time the doctor found a ''small hernia to one-third down the inguinal canal.'' Grimmett testified that Hudgens told him at this time that ''he was handling a billet and it started to slip and he grabbed it or something.* * *

''Well, Alvis told me that his job consisted of lifting billets that weighed fifty pounds, the best I remember, I didn't put all this down, and I felt like the lifting, when he said the billets were hot at the time they were lifted by tongs or something, I felt like it was directly related to his work.''

Grimmett first stated that claimant suffered a recurrence of the hernia in June, 1964, though, at another point in his evidence, he said that it was not until October, 1964, that he could definitely say that Hudgens had a ''true hernia.''[1] The doctor further testified that

---

[1]According to the doctor, ''A true hernia is the protrusion through the wall of the abdomen outside the abdominal cavity.''

in June, 1965, appellee had to leave his work because he was having symptoms of strangulation or incarcerated hernia. Dr. Grimmett gave him medicine for pain and suggested that he return to work, using, as much as possible, his leg muscles, instead of his back muscles. In January, 1966, Hudgens still complained of having a lot of pain in the inguinal area from the hernia, and in August, 1966, it was decided that another operation should be performed.

Ark. Stat. Ann. § 81-1318 (Repl. 1960) provides:

"A claim for compensation for disability on account of an injury (other than an occupational disease and occupational infection) shall be barred unless filed with the Commission within two [2] years from the date of the accident."

Section 81-1313 (e) sets out that:

"* * *Recurrence of the hernia following radical operation thereof shall be considered a separate hernia and the provisions and limitations regarding the original hernia shall apply."

Appellee argues that Hudgens did not suffer an industrially caused hernia, as defined in the act, until June 11, 1965; that this was the date of the recurrence of the hernia, caused by a severe strain in the hernia region, while working, and with pain so intense that he had to cease work immediately; further, that notice of the occurrence was given to the employer within forty-eight hours thereafter, and his distress was such as to require the attendance of a licensed physician within forty-eight hours after the occurrence. Here, appellant is referring to the requirements set forth in "Claims for Hernia" in Section 81-1313, and he mentions the case of *Crossett Company* v. *Childers,* 234 Ark. 320, 351 S. W. 2d 841, as supporting his position. We disagree. That case does not hold that an industrially caused hernia only occurs when these five requirements

are brought into play. The language merely explains why special requirements are incorporated into the compensation act pertaining to hernia claims. The case has no bearing upon the statutory period allowed for filing a claim. Certainly, one who has sustained a hernia which arises out of his employment does not have to wait until some complication arises before filing his claim. *Crossett Company* v. *Childers,* supra, makes that very clear. The court said:

"* * *There can be no doubt that it was Childers' work and working conditions that caused his congenital weakness to be converted into an actual case of hernia. Under the appellant's theory Childers' injury could never have been compensable, for the incident of February 9 did not cause him to cease work, as the statute demands, and by February 12 it was too late for him to require the attendance of a physician within the limit of forty-eight hours."

It is thus evident that the taking of these steps is not essential to the filing of a claim, and the case also makes clear that one can sustain a hernia on the job without these experiences. The testimony is positive that Hudgens had a recurrence of his hernia, following operation, no later than October, 1964, and since no claim was filed until January, 1967, same was barred by the statute of limitations.

Affirmed.